**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| IZABELA IAZICHYAN, | No. 06-70148 |
| Petitioner, | Agency No. A096-364-890 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 3, 2010
Pasadena, California

Before: B. FLETCHER and PAEZ, Circuit Judges, and WALTER, Senior District
Judge.[**]

Izabela Iazichyan petitions for review of a BIA decision affirming an IJ's

denial of her application for asylum, withholding of removal, and relief under the

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Donald E. Walter, Senior United States District Judge
for Western Louisiana, sitting by designation.

Convention Against Torture ("CAT"). We grant the petition for review and remand.

The IJ denied asylum because he found Iazichyan was not credible, that even assuming she was credible she had not suffered mistreatment amounting to persecution, and that she had not demonstrated a well-founded fear of future persecution. He denied withholding of removal for the same reasons, and denied CAT relief on finding that there was no evidence that Iazichyan would be tortured if returned to Georgia. The BIA adopted these portions of the IJ's opinion.

The IJ's adverse credibility determination was not supported by substantial evidence. *See Li v. Ashcroft*, 378 F.3d 959, 962 (9th Cir. 2004). The IJ relied on a host of purported inconsistencies for which no contradiction actually appears in the record: whether Iazichyan had been baptized, the number of men who participated in an attack in 1998, whether Iazichyan had x-rays taken following her concussion, whether she saw a private ophthalmologist or went to a district clinic, the reasons for her travel from Georgia, and whether a particular meeting was a social gathering or illegal meeting and how that group of people was dispersed by police. *See Aguilera-Cota v. INS*, 914 F.2d 1375, 1382-83 (9th Cir. 1990); *see also Smolniakova v. Gonzales*, 422 F.3d 1037, 1045 (9th Cir. 2005). The IJ also relied on a minor lapse in Iazichyan's memory as to the precise date of the attack in 1998,

and Iazichyan's failure to provide certain corroborating documents, neither of which supports the adverse credibility finding.[1] *See Kaur v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir. 2005); *Salaam v. INS*, 229 F.3d 1234, 1239 (9th Cir. 2000). Finally, Iazichyan was not given an adequate opportunity to explain many of the purported inconsistencies on which the IJ relied, including whether her husband's medical records following his beating and heart attack show the cause of his heart attack. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009).

We also conclude that the IJ's determination that Iazichyan had not suffered past persecution was not supported by substantial evidence. We list briefly the incidents that separately or taken together show that Iazichyan suffered persecution. Iazichyan's husband was fired from his job because he had an Armenian surname. She and her family were forced from their apartment by strangers who threatened to shoot them if they did not leave. Her religious meetings were disrupted several times. Specifically, in 1998 the police disrupted one of the meetings shooting guns into the air and threatening to kill those present. They detained the participants and violently shoved Iazichyan to the ground,

---

[1] We also note that even if failure to provide corroborating documents might sustain an adverse credibility finding in a pre-REAL ID act case where there is no independent reason to question the petitioner's credibility, Iazichyan actually provided corroborating documents.

3

causing the concussion resulting in the injury to her vision. When Iazichyan went to the police following this incident, they laughed at her request for help and derided her religion. In 1999 she was fired from her job due to her Armenian heritage and replaced by a Georgian. In 2000 her religious group was again disrupted by men who beat and detained one of the participants. In 2002 a meeting of the congregation was disrupted by the police who destroyed the group's religious books, detained Iazichyan's husband for two days, and beat him. Immediately thereafter her husband suffered a heart attack that left him permanently disabled. We have held that similar facts in other cases compelled a finding of past persecution. *See Vallecillo-Castillo v. INS*, 121 F.3d 1237, 1238, 1240 (9th Cir. 1997); *Surita v. INS*, 95 F.3d 814, 819-20 (9th Cir. 1996); *Gonzalez v. INS*, 82 F.3d 903, 906, 909-10 (9th Cir. 1996).

Having proved past persecution, Iazichyan is entitled to a presumption of a well-founded fear of future persecution and is presumptively eligible for withholding of removal. *See Mousa v. Mukasey*, 530 F.3d 1025, 1029-30 (9th Cir. 2008). The government failed to rebut either of these presumptions with proof of

4

changed country conditions.[2] Iazichyan presented substantial expert testimony that Armenians and Evangelical Christians continue to be persecuted in Georgia and that she would be persecuted if returned. The expert testified that at best, it was entirely unclear whether the new president would attempt to combat the type of persecution Iazichyan had suffered and that he had yet to make any substantial efforts to do so. *Cf., e.g.*, *Rios v. Ashcroft*, 287 F.3d 895, 901-02 (9th Cir. 2002). This is particularly significant given that the prior president had attempted but failed to curtail such persecution, leading to increased abuses under his administration. The State Department reports corroborate the expert's testimony in this regard. Finally, as the expert witness testified, the arrest of one man, Basili, who was responsible for only one incident of Iazichyan's persecution is not enough to rebut Iazichyan's well-founded fear of persecution.[3] We conclude that the government did not rebut the presumption of well-founded fear on Iazichyan's part.

---

[2]The government would have us remand to allow the agency to address whether the government established changed country conditions. There is no such need. At the asylum hearing, the government presented the 2003 U.S. State Department Country Report on Human Rights Practices for Georgia. The Report, however, does not support the government's assertion of changed country conditions.

[3]We note, for example, that the State Department report states that even during Basili's trial, his followers continued to threaten and harass others.

We therefore grant the petition for review.  Because Iazichyan is eligible for asylum, we remand to the Attorney General to exercise his discretion to grant Iazichyan asylum.   We grant withholding of removal because the government has not rebutted the presumption of Iazichyan's future persecution.  *See Ahmed v. Keisler*, 504 F.3d 1183, 1200 (9th Cir. 2007).  We do not address Iazichyan's CAT claim because she did not raise it before this court.

**PETITION GRANTED AND REMANDED.**